**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RICKY FREDERICK, ROBERT LEIS, and ROBERT MARTIN, <br><br> Plaintiffs, <br><br> v. <br><br> ABBOTT LABORATORIES, <br><br> Defendant. | No. 03 C 5038 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ricky Frederick, Robert Leis, and Robert Martin were previously employed by Defendant Abbott Laboratories ("Abbott") as heating ventilation air conditioning ("HVAC") mechanics. The Plaintiffs were terminated on February 20, 2003, and later filed a two-count Complaint against Abbott. Count I alleges that the Plaintiffs were discriminated against based on their gender in violation of Title VII when they were terminated. Count II alleges that Abbott intentionally terminated the Plaintiffs' employment for the purpose of interfering with their medical and pension benefits in violation of the Employee Retirement Income Security Act ("ERISA"). Abbott now moves for summary judgment.

**I. Background**

During the relevant time period, Abbott employed approximately twelve HVAC mechanics in its Corporate Engineering Division. These mechanics were tasked with completing work orders assigned to them by the HVAC Group Leader, Pete DeBree. Some of these work orders were preventative maintenance ("PM") work orders generated by a computer on a set schedule, which required the HVAC mechanic to inspect airhandling units, read the unit's

manometers (devices used to measure air pressure across a filter), and record the readings in a filter performance log book. When an HVAC mechanic completed a PM work order, he was required to sign and date the work order under the words "Work Order Completed By," indicating that the work order had been completed. Directly beneath this section were the words "Work Order Not Completed," followed by the word "Reason." If an HVAC mechanic could not locate the log book to record the manometer readings, he was permitted to record the manometer readings on a sheet of paper, staple it to the work order and transfer the readings to the log book at a later date. The two filter performance log books, one for production areas and one for office space, were three-ring binders containing log sheets listing various equipment by building and floor. HVAC mechanics, including the Plaintiffs, received annual Good Manufacturing Practices ("GMP") training on how to properly complete a work order. Kimberly Richtmyre, Supervisor of the HVAC group, conducted monthly HVAC group meetings where HVAC mechanics could ask questions about their work orders.

In early February 2003, the Federal Drug Administration ("FDA") conducted an audit of one of Abbott's divisions. In anticipation of the FDA's audit, Richtmyre retrieved the log book, discovered that some of the log book data was missing and informed David Taylor (Section Manager) and Daniel Fruehe (Manager of Maintenance) of the problem. Fruehe notified his boss, Patrick Killian (Director of Plant Maintenance), about the missing log book data, which by that time the FDA had requested. Killian contacted Lynne Faragher (Human Resources Manager), informing her of the FDA's request, the missing data, and the possibility that there had been falsification of documentation. This information was then relayed to Faragher's boss, Mark Naidicz, Human Resources Director.

Richtmyre obtained the corresponding work orders that required the HVAC mechanics to record the manometer readings in the log book. The work orders were signed as complete by four HVAC mechanics: the three Plaintiffs and Christopher Galauskas.[1] On February 6, 2003, Naidicz instructed Killian, Fruehe, and Faragher to interview the four mechanics and obtain written statements from them. The Plaintiffs admitted that they had signed the work orders as complete but had not recorded the manometer readings in the filter performance log book.[2] Abbott terminated the Plaintiffs, on February 20, 2003, for falsification of documentation. The Plaintiffs allege that their Group Leader, DeBree, and the Scheduler / Planner, Dennis Hauser, had previously told them that the log books were no longer being used. Also, the Plaintiffs point out that the work orders contained a line which read "Log Entry Required: N."

Elizabeth McGruder was an apprentice in Abbott's Skilled Trades Education Program ("STEP") training to be an HVAC mechanic. As a STEP employee, McGruder was required to work with full-time HVAC mechanics during the day and attend classes at a local college at night. McGruder received her work assignments from HVAC Group Leader DeBree. The Plaintiffs allege that McGruder was treated more favorably because she was not terminated following the discovery of the missing filter performance log book data.

---

[1] According to Richtmyre, Galauskas had recorded his readings in the log book, but did not sign and date the entries and missed one reading. (See Richtmyre Dep. Ex. 33). Galauskas was placed on six-month probation for failing to sign and date his log-book entries.

[2] The Plaintiffs were accused of signing six work orders as complete without recording the readings in the filter performance log book. The work orders contained an instruction requiring the HVAC mechanic to document the manometer reading in the filter performance log. Of the six work orders in question, Plaintiff Martin was responsible for completing two of them, dated complete 7/4/02 and 7/26/02; Plaintiff Leis was responsible for two, dated complete 8/15/02 and 12/6/02; and Plaintiff Frederick was responsible for one, dated complete 11/6/02.

## II. Analysis

### A. Count I - Gender Discrimination

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). In determining whether any genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of fact exists only when, based on the record as a whole, a reasonable jury could find for the non-movant. *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

In the absence of direct evidence of gender discrimination, as is the case here, plaintiffs must present indirect evidence of discrimination through the three-part burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the burden-shifting method, the plaintiff has the burden of establishing a prima facie case for discrimination. *Id.* To establish a prima facie case, the plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for the job in question or was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated persons not in the protected class more favorably. *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 376 (7th Cir. 1998).

If the plaintiff makes out his prima facie case, the burden shifts to the defendant to present a legitimate, non-discriminatory basis for the adverse action. *Cowan v. Glenbrook Sec. Servs.*, 123 F.3d 438, 445 (7th Cir. 1997); *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000). If the defendant is able to do so, the burden shifts back to the plaintiff to

establish that the proffered reason is merely a pretext for discrimination. *Cowan*, 123 F.3d at 445; *Miller*, 203 F.3d at 1007.

### 1. The Plaintiffs' Prima Facie Case

Since the parties do not dispute that elements (1) and (3) of the prima facie test had been met, I consider here only whether the Plaintiffs were meeting Abbott's legitimate expectations and whether McGruder was a similarly situated female employee who received more favorable treatment.[3] First, Abbott argues that summary judgment is appropriate because the Plaintiffs cannot establish that they were meeting Abbott's legitimate expectations. Abbott claims that the Plaintiffs falsified documentation when they signed work orders as complete but did not record the manometer readings in the filter log book. Plaintiffs neither made any notation on the work orders indicating that the work orders could not be completed nor recorded the manometer readings on a separate sheet of paper to be transferred into the log book at a later date. Abbott maintains that it had a legitimate expectation that the Plaintiffs would not sign work orders that state that they had performed work that they had not, in fact, performed.

In response, the Plaintiffs make four brief arguments. First, the Plaintiffs indicate that prior to their termination, each of the three Plaintiffs had consistently received positive performance evaluations from Group Leader DeBree and Supervisor Richtmyre. Second, the Plaintiffs assert that, as HVAC Group employees, they attended annual GMP training conducted

---

[3] With respect to the first element (that the male Plaintiffs are part of a protected class in a gender discrimination suit), this may be somewhat of an oversight on the part of Abbott. I may be wrong, but it seems that Plaintiffs may have a difficult time establishing the existence of background circumstances, which would suggest that the Defendant is one of those unusual employers who discriminates against the majority. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 456-57 (7th Cir. 1999).

by Abbott's Quality Group and monthly meetings conducted by DeBree and Richtmyre where the HVAC employees were instructed on how to complete their assigned work orders. During these meetings, the Plaintiffs say they were explicitly told to sign and date the work orders upon completion without making any other marks on the work orders. Third, the Plaintiffs claim that, in late spring or early summer of 2002, they were explicitly instructed by DeBree and Planner / Scheduler Hauser that the filter performance log books were no longer being used and that the filter log readings did not need to be recorded until further notice. The Plaintiffs maintain that neither DeBree nor Hauser ever informed them that the log book procedure was being re-instituted. Finally, the Plaintiffs point to a line contained on the work orders that reads "Log Entry Required: N." The Plaintiffs claim that they understood this line to mean that they were not required to record their manometer readings in the filter performance log book.

The fact that the Plaintiffs had received positive performance evaluations is not sufficient evidence that they were meeting their employer's legitimate expectations. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (quoting *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 336 (7th Cir.1991) (In ascertaining whether a plaintiff has met his employer's legitimate expectations, the issue is not the employee's past performance, but "whether the employee was performing well at the time of his termination."). Furthermore, employers generally have a legitimate expectation that its employees will not falsify documents. *See Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 767 (7th Cir. 1994); *Contreras v. Suncast Corp.*, 129 F. Supp. 2d 1173, 1180-81 (N.D. Ill. 2001).

However, the Plaintiffs' allegations that, in late spring or early summer of 2002, they were explicitly instructed by DeBree and Hauser that the filter performance log books were no longer

6

being used and that the filter log readings did not need to be recorded, if true, would rebut Abbott's claim that they were not meeting the company's legitimate expectations. Stripped down, this is a case of one party's word against the other. DeBree denies telling any HVAC mechanics that the filter performance log book was no longer being used or that the manometer readings were not to be recorded. Richtmyre also denies that she discontinued the use of the filter performance log book prior to the Plaintiffs' termination.[4]

Plaintiff Martin stated that in June or July of 2002, DeBree informed him that filter log readings were no longer being taken and recorded and then took his filter log book. (Martin Dep. at 58-62). The reason given by DeBree for the discontinuation of the log book entry procedure, according to Martin, was that the HVAC mechanics' time could no longer be billed to the department in which the equipment being recorded was located. The next day, Martin inquired about the filter log readings with Planner / Scheduler Hauser who likewise informed Martin that the filter performance logs were no longer being recorded. Plaintiff Leis testified that, sometime in 2002, DeBree informed him and Plaintiff Frederick that the log books were no longer being used. (Leis Dep. at 66-69). Leis also stated that he repeatedly asked both DeBree and Hauser for the log books when he received a work order instructing him to record a filter log reading.

Other HVAC Group employees also testified that the filter log books were no longer being used. Matt Walker, HVAC mechanic, claims he was instructed by DeBree that the filter log books were no longer being utilized in late 2002. (Walker Dep. at 33-34). According to

---

[4] At her deposition, Richtmyre testified that the HVAC Group changed the work order policy after the Plaintiffs were terminated, in March or April of 2003, by eliminating the log book entry requirement and allowing HVAC mechanics to record the manometer readings directly on the work order. (Richtmyre Dep. at 87-88).

7

Walker, after stating to DeBree that he could not sign work orders as complete unless he recorded the filter log readings, DeBree specifically instructed Walker to sign off on work orders and not to worry about recording the readings in the filter log book. Chris Galauskas, former HVAC mechanic and one of the mechanics who, along with the Plaintiffs, was investigated for missing log book data, testified at his deposition that he was instructed that the filter log books were no longer being used; yet, he continued to receive work orders that required filter log readings to be taken and recorded.[5] (Galauskas Dep. at 29; 32-33). Kevin Ehmke, former HVAC mechanic, testified that the filter log books were removed from the HVAC Group by Richtmyre and that he overheard her say that the log books were "a waste of time." (Ehmke Dep. at 27).

Abbott argues that even if DeBree told the Plaintiffs that the filter performance log book was no longer being used, which he denies, the Plaintiffs still have not established that they were meeting Abbott's legitimate expectations because the Plaintiffs knew that if the log book was unavailable, HVAC mechanics were to record the manometer readings on a separate sheet of paper and attach the readings to the work order. Also, if a work order could not be completed as written, HVAC mechanics were required to write the reason the work order could not be completed in the space marked "Work Order Not Completed.." Rather than doing either of these things, the Plaintiffs simply signed the work orders as completed. However, the validity of this argument is contingent upon whether DeBree told the Plaintiffs that the filter performance log

---

[5] It should be noted that Galauskas did not testify as to the date that he was allegedly told that the log books were no longer being used. Thus, it could have been after March or April of 2003 when Richtmyre testified that Abbott discontinued the log book entry procedure, as mentioned above.

book was no longer being used or that the manometer readings were not to be recorded. DeBree was the Group Leader and the Plaintiffs' direct superior. Additionally, at their annual and monthly training meetings, the Plaintiffs say, they were explicitly told to sign and date the work orders upon completion without making any other marks on the work order. The Plaintiffs suggest this instruction as a reason for not marking the "Work Order Not Completed" section of the work order.

Drawing all reasonable inferences in the Plaintiffs' favor, I conclude that the Plaintiffs have satisfied the second element of their prima facie case because they have presented a genuine issue of fact as to whether they were meeting Abbott's legitimate expectations.

Abbott also argues that summary judgment is appropriate because the Plaintiffs failed to establish that similarly situated female employees were treated more favorably than the Plaintiffs. A plaintiff may demonstrate that another employee is similarly situated by showing that there is someone who is directly comparable to him in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). In determining whether employees are similarly situated, "a court must look at all relevant factors," and "in disciplinary cases– in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason– a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). For example, "[t]his normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.*

9

The Plaintiffs identify Ms. McGruder as a similarly situated female employee who was treated more favorably than themselves. Abbott sets forth several factual arguments seeking to point out differences between the Plaintiffs and McGruder. First, Abbott indicates that McGruder was not an HVAC mechanic; rather, she was an apprentice in the STEP program. As such, she worked at Abbott during the day and attended classes at a local college at night. STEP employees typically rotate through different departments within Abbott, usually for six months at a time. Upon completion of the apprenticeship, a STEP employee can apply for a full-time position with Abbott. Second, Abbott claims that even though McGruder received work assignments from Group Leader DeBree, McGruder's manager and the person to whom she ultimately reported was the STEP coordinator, Bob Lynch, a manager in a different department. Third, Abbott argues that the Plaintiffs and McGruder differed in their duties. McGruder was required to work with an HVAC mechanic because, as a STEP employee, she was not allowed to work alone. Abbott claims that, while she was assigned PM work orders, McGruder was not assigned any work orders that required her to take filter readings on airhandlers because that was a "one person job." Finally, Abbott found no evidence that McGruder signed any work orders stating that she had completed work that she had not completed.

Plaintiffs counter each of Abbott's assertions. First, Plaintiffs contend that McGruder was a full-time employee in the HVAC Group and point out that she worked in the HVAC Group from February 2002 until October 2003, considerably longer than the typical six-month rotation within Abbott. Also, many full-time HVAC mechanics have attended classes at a local college at night; in fact, Plaintiff Frederick began his employment at Abbott in the STEP program, attending HVAC training classes at a local college at night. Additionally, like Plaintiffs, McGruder was required to obtain her refrigerant certification card to maintain employment in the

HVAC Group. Second, Plaintiffs stress that McGruder received her assignments and work orders from Group Leader DeBree, in an identical fashion as Plaintiffs. Furthermore, DeBree and Richtmyre were responsible for evaluating McGruder's performance.[6] (Richtmyre Dep. at 141). Third, while McGruder was not allowed to work alone, it was common for DeBree to assign HVAC mechanics to work in pairs, including the Plaintiffs. (In her affidavit, McGruder stated that she performed all the job functions and duties of an HVAC mechanic) (McGruder Aff. 4, 8). Plaintiff Martin stated in his deposition that when McGruder was assigned to work with him, "[t]here was nothing [Martin] did that [McGruder] didn't do." (Martin Dep. at 146). DeBree has admitted that McGruder may have signed and completed work orders that she had been assigned to perform with a full-time HVAC mechanic. (DeBree Dep. at 62). According to McGruder's affidavit and Plaintiff Frederick's deposition testimony, McGruder executed PM work orders and made entries into the filter performance log book during the time she worked in the HVAC Group. (McGruder Aff. at 2-3; Frederick Dep. at 83, 86). Finally, McGruder claimed in her affidavit that, during her employment in the HVAC Group, she received assignments to perform work orders that instructed her to record filter log readings in the filter performance log book after the log book procedure allegedly had been eliminated. (McGruder Aff. at 19). She was, therefore, unable to record the filter log readings as required by the work order.

Abbott argues, even if McGruder did falsify work order documents, the decision maker, Paul Finegan (Vice President, Corporate Engineering Department), was not aware of any such conduct by McGruder. On February 6, 2003, according to Abbott, after interviewing and

---

[6] A performance evaluation was never actually completed because McGruder took maternity leave before completing her HVAC rotation.

obtaining the written statements from the Plaintiffs, Richtmyre, Faragher, Taylor, and Fruehe met to discuss the situation. The following day, Richtmyre sent an e-mail to Faragher, Taylor, Fruehe, and Killian confirming that the general consensus from their conversations was that the Plaintiffs should be terminated for falsification of documentation. Killian, one of the four recipients of the e-mail, testified at his deposition that he recommended to his superior, Finegan, that the Plaintiffs be terminated. (Killian Dep. at 24-25). Finegan approved the recommendation and Plaintiffs were subsequently terminated on February 20, 2003. [7]

According to Abbott, even if Richtmyre had knowledge regarding any falsification of work orders by McGruder, which Richtmyre denies, Finegan alone was the decision maker, and "[t]he law is clear that the knowledge of a non-decision maker is irrelevant." (Df. Memo. At 8). In support of this proposition, Abbott cites to *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1366 (7th Cir. 1988); *Lindsey v. Baxter Healthcare Corp.*, 757 F. Supp. 888, 896 (N.D. Ill. 1991); and *Hempstead v. Rockford Hous. Auth.*, 2000 WL 516187 (N.D. Ill. Apr. 25, 2000). However, this argument is somewhat misplaced. All three of the cases referenced by Abbott consider the non-decision maker's knowledge in determining pretext, not whether an employee is similarly situated. The central question here is whether McGruder had essentially the same job and followed the same procedures as the Plaintiffs. Whether Finegan knew of McGruder's actions and responsibilities at the time is simply irrelevant.

Drawing all reasonable inferences in the Plaintiffs' favor, I conclude that the Plaintiffs have satisfied the fourth element of their prima facie case because they have presented a genuine

---

[7] There is some dispute as to whether Finegan alone had the power to terminate an employee and whether he was involved in the decision to terminate the Plaintiffs' employment.

issue of fact as to whether McGruder was a similarly situated female employee who was treated more favorably than the Plaintiffs were treated.

**2. Pretext**

Finally, Abbott argues that even if the Plaintiffs are able to establish a prima facie case of gender discrimination, Abbott would nonetheless be entitled to summary judgment because Abbott had a legitimate, non-discriminatory reason for terminating their employment. A plaintiff may establish that the defendant's proffered reason for termination was pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Mechnig*, 864 F.2d at 1364 (quoting *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The plaintiff may demonstrate that the employer's reason is unworthy of credence by providing "evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation . . . or were insufficient to motivate" the action. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888-89 (7th Cir. 2001) (quoting *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir. 1998)). Thus, the inquiry here is limited to whether the employer honestly believed the reason it gave for the decision to terminate the Plaintiffs, and not whether it made a mistake or a bad business decision. *Kralman v. Illinois Dep't of Veterans' Affairs*, 23 F.3d 150, 156 57 (7th Cir. 1994).

Abbott asserts that the Plaintiffs were terminated because they falsified company documents when they signed work orders indicating that they had completed their assigned tasks, despite the fact that they did not complete those tasks. Plaintiffs, on the other hand, claim that the circumstances surrounding their termination and this litigation support a finding of pretext. First, Plaintiffs allege that Abbott lied about who was involved in the Plaintiffs' terminations.

The Plaintiffs point out that when Abbott responded to Plaintiffs' First Set of Interrogatories, Abbott stated that Richtmyre, Faragher, Taylor, Fruehe, and Killian were the individuals involved in the decision to terminate the Plaintiffs. Not until eight months later did Abbott assert that Finegan was the individual who made the ultimate decision to terminate Plaintiffs. This, Plaintiffs contend, shows that Abbott was "attempting to insulate itself from liability by continuing to climb the corporate ladder in order to separate the decision maker from pertinent knowledge regarding the discriminatory bases for the terminations of Plaintiffs." (Pl. Memo. at 13). The late discovery of Finegan's identity does not, however, establish pretext. Abbott has stated that their Answer was truthful when given and that it had later determined during discovery that although all of the individuals listed were involved in the decision to terminate Plaintiffs, none of those individuals possessed the authority to make the final termination decision. Ultimately, Finegan's decision-making responsibility was disclosed to Plaintiffs at Killian's deposition on July 23, 2004, leaving time for Plaintiffs to depose Finegan during the discovery period.[8] (Killian Dep. at 24-25).

Plaintiffs further allege that legitimacy of Abbott's given reason for their termination is disputed by the record in this case. Plaintiffs' claims that Abbott had abandoned its policy of taking manometer readings and recording them in the log books. Plaintiffs assert that DeBree and Richtmyre removed the log book from the HVAC Group. DeBree stated at his deposition on July 27, 2004, that he was unaware of where the filter log books were being kept at the time of his testimony and that the last time DeBree saw them in his desk was a "couple of years" ago. (DeBree Dep. at 36). The Plaintiffs contend that, following the alleged elimination of the log

---

[8] Abbott points out that the Plaintiffs did not take the opportunity to depose Finegan during discovery.

book entry procedure, DeBree and Hauser told the HVAC mechanics, including Plaintiffs, to disregard instructions on the work orders regarding log book entry and sign and date them as complete without recording the manometer readings. Plaintiffs also assert that the work orders contained the instruction "Log Entry Required: N." Looking at the facts in the light most favorable to the Plaintiffs, I find that the evidence presented casts sufficient doubt on Abbott's proffered non-discriminatory reasons to survive summary judgment.

### B. Count II -ERISA

With respect to Plaintiffs' ERISA claim, Abbott argues that the Plaintiffs cannot establish a prima facie case of interference with their ERISA because the Plaintiffs were not qualified for their job positions and were not discharged under circumstances that provide some basis for believing that the prohibited intent to retaliate was present. See *Salus v. GTE Directories Serv. Corp.*, 104 F.3d 131, 135 (7th Cir. 1997). Further, Abbott asserts that even if the Plaintiffs could establish their prima facie case, they cannot rebut Abbott's legitimate, non-discriminatory reason for terminating Plaintiffs' employment because they fail to show that Abbott's explanation is pretextual and "that the motivating factor behind the termination was the specific intent to interfere" with the Plaintiffs' ERISA rights. *Id*. Upon further review, Plaintiffs conceded all claims under Count II of their Complaint.

### III. Abbott's Motions to Strike

#### A. Abbott's Motion to Strike Portions of Plaintiffs' Response to Abbott's Statement of Material Facts

In addition to its Motion for Summary Judgment, Abbott has also filed a Motion to Strike portions of Plaintiffs' Response to Abbott's Statement of Material Facts. Local Rule 56.1(b)(3)(A) provides that the opposing party to a motion for summary judgment must respond

15

to the movant's Statement of Material Facts with "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon..." Local R. 56.1(b)(3)(A). If the non-moving party fails to comply with the local rules regarding its response, the response may be stricken. *Rosemary B. v. Bd. of Ed.,* 52 F.3d 156 (7th Cir. 1995). "The well-known consequence of a failure to comply with local rule [56.1] is that each of the properly supported facts contained in the movant's [56.1] statement of material facts is deemed admitted." *MacDonald v. Commonwealth Edison,* 810 F. Supp. 239, 242 (N.D. Ill. 1993); Local Rule 56.1(b)(3).

First, Abbott argues that Plaintiffs' responses to Material Facts 39, 42, 45, 48, 51, 73, 75, 76, 78, 79, 90, 97, 101, 105, 109, 110, and 119 should be stricken because they are improper. In the responses other than 119, Plaintiffs stated they did not dispute the material fact stated and proceeded to offer additional non-conflicting, explanatory information. Since the Plaintiffs did not dispute these material facts, I deem them admitted. The admission of these facts is, however, of little consequence since it does not mean that Plaintiffs are prohibited from using the explanatory information in their motion for summary judgment. The additional information provided by Plaintiffs is based on the record and may be used to put the facts in context. Material Fact 119 was properly disputed by Plaintiffs and is not deemed admitted.

Second, Abbott argues that Plaintiffs' responses to Material Facts 17, 18, 19, 32, 35, 36, 38, 41, 44, 47, 50, 67, 70, 71, 77, 84, 85, 86, 88, 96, 98, 102, 103, 106, and 111 should be stricken because Plaintiffs fail to cite sufficient information to support their denial. After reviewing Plaintiffs' Answers and the supporting materials, I find they are sufficiently supported and should stand.

**B. Abbott's Motion to Strike Certain Exhibits Offered by Plaintiffs**

Abbott argues that Plaintiffs' Exhibits DD, OO, PP, QQ, TT, WW, YY, and AAA should be stricken because they have not been properly identified by affidavit or otherwise made admissible. As a general rule, however, "documents produced in response to discovery are self-authenticating." *Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc.,* 46 F. Supp. 2d 769, 772 (N.D. Ill. 1999)(quoting *South Cent. Bank v. Citicorp Credit Services.* 863 F. Supp. 635, 645 (N.D. Ill. 1994)("there is no error to admit as evidence documents that Defendants themselves possess and produced in response to Plaintiff's request for production of documents."). Exhibits OO, PP, QQ, TT, WW, YY, and AAA were produced by Abbott, and are, therefore, admissible without further authentication. Exhibit DD was not produced during discovery and is not automatically authenticated.

## VI. Conclusion

For the reasons stated above, Abbott's Motion for Summary Judgment is GRANTED as to Plaintiffs' ERISA claim and is otherwise DENIED, Abbott's Motion to Strike Portions of Plaintiffs' Response to Abbott's Statement of Material Fact is GRANTED in part and DENIED in part, and Abbott's Motion to Strike Certain Exhibits Offered by Plaintiffs is GRANTED with respect to Exhibit DD and is otherwise DENIED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: March 16, 2005